J-S51001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TIMOTHY AARON SCHELL | : | |
| | : | |
| Appellant | : | No. 1949 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 31, 2018
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0005272-2017

BEFORE:  PANELLA, P.J., GANTMAN, P.J.E., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED OCTOBER 29, 2019**

Timothy Aaron Schell appeals from the judgment of sentence imposed following his jury conviction of robbery, conspiracy to commit burglary, and related offenses.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. **See** Trial Court Opinion, 1/22/19, at 1-7. Therefore, we have no need to restate them at length here.

However, for the convenience of the reader we note briefly that Schell's conviction arose out of the theft of about $200 from Carlos Molina-Silva. Schell

---

[1] Specifically, the jury convicted Schell of robbery, 18 Pa.C.S.A. § 3701(a)(1)(iii); conspiracy to commit burglary, 18 Pa.C.S.A. § 903; burglary, 18 Pa.C.S.A. § 3502; criminal trespass, 18 Pa.C.S.A. § 3503(a)(1)(i); theft by unlawful taking, 18 Pa.C.S.A. § 3921(a); terroristic threats, 18 Pa.C.S.A. § 2706(a)(i);and simple assault, 18 Pa.C.S.A. § 2701(a)( 3).

testified in his own defense and many of the underlying facts are hotly disputed. Nevertheless, viewed in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences, there was sufficient evidence for the jury to find the following facts:

On July 29, 2017, after a night of heavy drinking at the local Veterans of Foreign Wars (V.F.W.) club, Schell and his longtime girlfriend/paramour, Andrina Shutt, ran out of money. Schell wanted more money to play poker the next day. They decided that Shutt would drive to Molina-Silva's nearby apartment and have sex with him for money.

Shutt had a day job, but was also a prostitute.[2] She claimed at trial that if she refused to have sex with other men for money, Schell became "extremely physically and mentally abusive." Trial Court Opinion, at 17. Shutt testified that she had also known Molina-Silva for twelve years. After initially agreeing to Schell's plan, Shutt changed her mind, and refused. She also became ill.

Shutt called Schell on her cell phone from Molina-Silva's bathroom. She informed Schell that she was not going through with the plan to have sex with

_____

[2] Shutt was the mother of five children. Schell was the father of at least one of the children, and possibly more, but their respective testimony about parentage was vague and inconclusive. Furthermore, Shutt suggested that the victim, Carlos Molina–Silva, may have also been the father of one or two of the children. *See* N.T. Trial, 8/28/18, at 138, 194.

Molina-Silva. They argued. Finally, Shutt told Schell to get the money himself. Schell agreed.

Schell entered the apartment with his face partially obscured by a tee shirt wrapped as a bandana. Schell contended that Shutt let him into the apartment. Molina-Silva testified that he did not know Schell and had never invited Schell into his apartment.

After entering the apartment, Schell punched Molina-Silva, knocking him down, and demanded money; he put a knife to Molina-Silva's throat and threatened to kill him if he did not provide more. In the struggle, Schell's tee shirt/bandana worked loose, and Molina-Silva was able to see Schell's entire face. After Molina-Silva provided the money, Schell left. Molina Silva waited a day, but finally reported the incident to the police.

At trial, defense counsel objected when the prosecutor brought up the abusive relationship in the Commonwealth's opening statement, as a reference to prior bad acts, not permitted under the Rules of Evidence. The trial court denied counsel's motion for a mistrial. Defense counsel also objected to the prosecutor's statement that in the course of many taped prison conversations with Shutt that were played at trial, Schell never said he was innocent. Defense counsel argued that the prosecutor's remark shifted the burden of proof to the defense. However, counsel declined the trial court's offer of a special curative instruction. **See** N.T. Trial, 286-87. The trial court gave a standard, comprehensive instruction on the burden of proof, and the

presumption of innocence, repeating the preliminary instruction it had given at the beginning of trial.

The jury convicted Schell of all charges. The trial court imposed an aggregate sentence of not less than thirteen nor more than twenty-six years of incarceration at a state correctional institution. This timely appeal followed.[3]

Schell presents three questions for our review on appeal:

I. Whether the trial court erred by denying Appellant's motion for mistrial during the Commonwealth's opening statement when the Commonwealth disclosed past misconduct without providing notice [pursuant] to Rule 404(b)?

II. Whether evidence at trial was insufficient to prove that Appellant committed the offense of conspiracy to burglary where the Commonwealth failed to establish that the Appellant conspired with another to enter the complaining witness's residence?

III. Whether the trial court erred in overruling Appellant's objection during the Commonwealth's closing argument because the Commonwealth's statement amounted to burden shifting asserting that the Appellant had an affirmative duty to assert his innocence, which is highly prejudicial to the jury?

Appellant's Brief, at 6 (unnecessary capitalization omitted).[4]

Preliminarily, we note that the opening statements in this trial were not transcribed. *See* N.T. Trial, 8/28/18, at 21. The trial court based its response

---

[3] Both Appellant and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925.

[4] Schell originally presented ten allegations in his statement of errors. The trial court responded to each of them. On appeal, Schell has chosen to proceed only on these three issues. Accordingly, we deem the remainder of his allegations of trial court error abandoned.

- 4 -

to Schell's first objection on the sidebar discussion of this issue, which was transcribed. Furthermore,

> It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice.

***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011) (citations and internal quotation marks omitted).

On the second issue, the trial court correctly describes our standard of review for a challenge to the sufficiency of the evidence. **See** Trial Court Opinion, at 7-8.

On the third issue, we note that counsel did not ask for a mistrial, and declined the trial court's express offer of a special instruction. **See** N.T. Trial, at 274-275, 287. Therefore, any allegation of trial court error has been waived. The trial court gave a prompt, comprehensive curative instruction, which emphasized the presumption of innocence, and the Commonwealth's unvarying burden to present evidence of each element of the crimes charged, beyond a reasonable doubt. **See** N.T. Trial, 288-290.

In any event, the claim would not merit relief. Our standard of review is abuse of discretion:

- 5 -

[E]ven where the language of the district attorney is improper, a new trial is not necessarily required. The language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict. The effect of such remarks depends upon the atmosphere of the trial.

Moreover, the prosecutor is entitled to argue any legitimate inferences which arise from the evidence and must be *free* to present his or her argument with logical force and vigor. In this regard, reversal of a conviction would be improper where the prosecutor's remarks are motivated by and [are] commensurate with those of the defense. **Whether these remarks are prejudicial is a question for the trial judge whose determination will not be overturned absent an abuse of discretion.**

*Commonwealth v. Blount*, 564 A.2d 952, 957 (Pa. Super. 1989) (emphasis added) (citations and internal quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (*See* Trial Court Opinion, 1/22/19, at 9-12; 15-17; and 18-20) (concluding: (1) the trial court properly denied defense motion for mistrial where an untranscribed reference to a pattern of abuse in Commonwealth's opening statement did not constitute evidence and merely described evidence Commonwealth intended to present, which Commonwealth later did, without objection; (2) viewed in light most favorable to Commonwealth as verdict winner, evidence of Schell's entry into the residence with his face covered, in conjunction with Schell's attempts to

convince Shutt not to testify, were sufficient for jury to find Schell was not licensed to enter the residence beyond a reasonable doubt; and (3) prosecutor's remarks during closing argument did not constitute improper burden shifting, and, even if it did, the trial court's instructions to the jury cured any undue prejudice). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2019